IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CEDRICK CRAWFORD, # 215796, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 3:12CV923-WHA |
| | ) [WO] |
| CARTER DAVENPORT, et al., | ) |
| | ) |
| Respondents. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

Petitioner Cedrick Crawford, an inmate in the Alabama Department of Corrections,
filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his 2008
conviction in the Circuit Court for Lee County, Alabama, for shooting into an occupied
vehicle, in violation of Alabama Code § 13A-011-061. *Doc. No. 9-1* at 14, 16.

As set out in the Alabama Court of Criminal Appeals opinion on direct appeal, *Doc.
No. 9-21*, the evidence at trial established the following facts. On September 14, 2007,
Demarquis Bunn was at the Spring Villa Grocery store at about 6:00 p.m., when he saw the
petitioner. *Doc. No. 9-21* at 3. Bunn had heard that petitioner was planning to shoot Bunn,
and Bunn said to him, "'Hey I heard you were going to shoot me.'" *Id.* Petitioner replied that
Bunn owed him money. Bunn testified that he owed Crawford $50 or $60, and he placed his
wallet and a $20 bill he had out for gas on the counter, telling petitioner, "'Here it is. If you
want it, come get it.'" *Id.* Bunn testified that petitioner said, "'no, I just want my money. And

he said a couple of times, two or three times, go on put your hands on me. He said, I got something at home for you and then he ran out the store.'" *Id.*

As the state court indicated, Crawford was wearing a straw hat and driving a black Lincoln Aviator with chrome-rimmed wheels that was parked in the store parking lot. *Id.* Bunn testified that a young white woman was in the car as well. *Id.* Petitioner got into the Aviator and drove toward his house, which was south of the store on Highway 169. *Id.*

Bunn paid for the gas and got into the driver's seat of the car of his girlfriend, Edna Nichols, who was in the passenger seat. *Id.* at 2. Jay Doswell was a passenger in the rear driver's seat, behind Bunn. *Id.* Bunn testified that as he was driving south on Highway 169, he saw petitioner's Lincoln Aviator approach from the other direction, and someone in the Aviator fired shots into Bunn's vehicle, hitting Bunn in the leg and Doswell in the back. *Id.* Bunn could not identify the driver but could see that the driver was a black man. *Id.* Bunn testified that he pulled into Mitchell Manor trailer park to "'gather himself.'" *Id.* at 4. Bunn testified that he found a bullet on the car floor and threw it out of his window in the confusion after the shooting. *Id.*

Nichols testified that she could not identify the driver of the Aviator. She did say, however, "'I know who left the store in that vehicle that looked exactly like the vehicle that just went by my car, but I didn't know what exact make it was.'" *Id.* Nichols testified that it was Crawford who left the store in a straw hat and got into the black SUV, and that she did not know him previously. *Id.*

Surveillance photos of a man wearing a straw hat at the Spring Villa Grocery store were admitted into evidence. A straw hat was recovered from petitioner's home on the date of the shooting. *Id.* Two bullet holes in the car were photographed–one in the driver's side door, and the other near the gas tank. *Id.* at 4, 15-17.

Matthew VanHook, Crawford's former roommate, testified that he was outside the store and he turned toward the vehicles when he heard gunshots. *Id.* VanHook said he saw Crawford driving, and they made eye contact. *Id.* at 5. A day or two later, Crawford saw VanHook at the store and asked, "You saw me didn't you?" *Id.*

Nichols called 911. *Id.* at 13. Officers in patrol vehicles responded. *Id.* at 25-30. A gunshot residue-detecting dog failed to locate gunshot residue at Crawford's residence or in the Aviator. *Id.* at 22-25.

Petitioner's wife, Sara Crawford, testified that on September 14, 2007, she went with petitioner to the Spring Villa Grocery store in their black Lincoln Aviator SUV. *Id.* at 5. She did not go into the store and, after they left, they went home. *Id.* It takes only a minute or two to get from the store to their home. *Id.* She testified that they then left their home in a different car to go out to eat and pick up a relative. They received a phone call from a relative indicating that there were sheriffs outside their home. *Id.* When they arrived at home, officers pointed guns at their car and handcuffed them after they got out of the car. *Id.*

Petitioner was charged with shooting into the vehicle, and a jury convicted him. Petitioner was sentenced to twenty years in prison. *Doc. No. 9-1* at 14. New counsel was

appointed and filed a motion for new trial, which was denied. *Doc. No. 9-10* at 93-102. Petitioner appealed, and the Alabama Court of Criminal Appeals affirmed the judgment. *Doc. No. 9-21.* He filed a petition for rehearing and further review, which were denied. *Doc. Nos. 9-22, 9-23, 9-24, 9-26, 9-27.* Petitioner sought certiorari before the United States Supreme Court, which also was denied. *Doc. Nos. 9-29, 9-30.*

Petitioner then filed an application for postconviction review. *Doc. No. 9-31.* After an evidentiary hearing, the Circuit Court denied relief. *Doc. No. 9-35* at 14-151; *Doc. No. 9-34* at 80-91. Petitioner appealed, and the Alabama Court of Criminal Appeals affirmed. *Doc. No. 9-40.* Crawford's petition for rehearing and petition for a writ of certiorari with the Alabama Supreme Court were unsuccessful. *Doc. Nos. 9-41, 9-42, 9-43, 9-44, 9-45, 9-46, 9-47, 9-48.* This federal habeas petition followed on October 15, 2012,[1] and respondents do not argue the petition is untimely.

Respondents have informed the court that, as of March 13, 2015, petitioner has an appeal pending in another Rule 32 proceeding regarding ineffective assistance of appellate counsel, but they indicate that this issue is not part of the section 2254 claims before this court. *Doc. No. 18.* The state court documents regarding the appeal were not filed with this court. Petitioner did not respond to respondents' notice, and did not seek a stay of this case

---

[1]The petition was stamped "filed" in this court on October 22, 2012, and Petitioner signed it on October 15, 2012. *Doc. No. 1* at 1, 14. Pursuant to the prison "mailbox rule," however, the court considers April 13, 2012, as the date of filing. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam) ("Absent evidence to the contrary in the form of prison logs or other records, [this court] will assume that [the prisoner's petition] was delivered to prison authorities the day he signed it ... .").

to pursue state court remedies. *See Rhines v. Weber*, 544 U.S. 269 (2005). Petitioner does not

specifically challenge the performance of his appellate counsel in this section 2254

proceeding, and the court makes no determination on the issue.

## II.  HABEAS PETITION

As set out in the petition for habeas relief, Petitioner raises the following claims:

1.      Petitioner's due process rights under *Brady v. Maryland*[2] were violated
        by the State's suppression of, destruction of, failure to preserve, and
        misrepresentation regarding favorable and material evidence. In
        particular, Petitioner argues the following evidence was wrongfully
        suppressed:

        a.      Impeachment evidence that eye witness VanHook had six prior
                convictions for crimes of negotiating a worthless negotiable
                instrument, *Doc. No. 1* at 9; *Doc. No. 9-18* at 35-41;

        b.      A tape recording of victim Edna Nichols's 911 phone call,
                which he could have used to impeach testimony of Nichols and
                Bunn, *Doc. No. 1* at 9; *Doc. No. 9-18* at 22-28;

        c.      Access to inspect or test the interior of Nichols's car in its
                damaged condition, depriving Petitioner of the ability to inspect
                the location of the bullet holes; Petitioner did not receive
                photographs of the car until the day of trial, *Doc. No. 1* at 9;
                *Doc. No. 9-18* at 28-35;

        d.      Police patrol vehicle videotape recordings that would have
                showed where the victims were and whether VanHook was at
                the scene, *Doc. No. 1* at 9; *Doc. No. 9-18* at 48-54;

        e.      Surveillance videotape from the store that was lost, which would
                have showed where the victims were and whether VanHook was
                at the scene, *Doc. No. 1* at 10; *Doc. No. 9-18* at 57-64;

---

[2]In *Brady*, the Supreme Court "h[e]ld that the suppression by the prosecution of evidence
favorable to an accused upon request violates due process where the evidence is material either to guilt or
to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373
U.S. 83, 87 (1963).

f.   Results from the gunshot residue-detecting dog that showed the dog failed to locate gunshot residue at Petitioner's home or car, *Doc. No. 1* at 10; *Doc. No. 9-18* at 42-48;

g.   The cumulative effect of suppressed, destroyed, or unpreserved favorable evidence, *Doc. No. 1* at 10.

2.   Petitioner argues that, on direct appeal, the state court held that Petitioner's trial counsel failed to exercise due diligence, and that this holding is in direct conflict with United States Supreme Court precedent, *Doc. No. 1* at 10-13;

3.   Although counsel's performance is irrelevant to the merits of the *Brady* claims, Petitioner received ineffective assistance of counsel because trial counsel failed to evaluate and preserve a challenge under *Brady* in the aforementioned ways, *Doc. No. 1* at 10-13.

Respondents filed a response to petitioner's habeas application in accordance with the provisions of Rule 5, *Rules Governing Section 2254 Cases in the United States District Courts*, arguing the petition is due to be denied. *Doc. No. 9.* Specifically, respondents argue that petitioner's *Brady* claims related to the 911 call and the inspection and photographs of the car are procedurally defaulted, as are his claims that counsel performed ineffectively. *Doc. No. 9* at 12-15, 35-36. Respondents further argue that petitioner cannot prevail on the merits of his other *Brady* claims under the federal habeas statute, 28 U.S.C. § 2254(d), because the state court rulings are not contrary to, or an unreasonable application of, clearly established United States Supreme Court law, and the decisions were not the result of an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Doc. No. 9* at 15-32; *see* 28 U.S.C. § 2254(d). Respondents argue that petitioner cannot obtain section 2254 relief on his claim that the Alabama Court of Criminal Appeals' ruling on direct appeal is in direct conflict with *Williams v. Taylor*, 529 U.S. 362, 402 (2000).

*Doc. No. 9* at 32-34.

This Court entered an order advising petitioner of the constraints that 28 U.S.C. § 2254(d)(1) places on the power of a federal court to grant relief. *Doc. No. 10.* The Court granted petitioner an opportunity to file a reply to respondents' answer. *Id.* Petitioner filed a reply. *Doc. No. 13.*

After reviewing the § 2254 petition, respondents' answer, petitioner's reply, the state court record, and applicable federal law, the Court concludes that no evidentiary hearing is required, and the petition[3] is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

The heart of this case concerns petitioner's *Brady* claims regarding six different pieces of evidence–VanHook's prior convictions, Nichols's 911 call, inspection and photographs of Nichols's car in its damaged state, video from patrol cars, surveillance video from the store, and results from the search conducted with the gunshot residue-detecting dog. A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). In one form or another, the Alabama Court of Criminal Appeals addressed the merits of all petitioner's claims, but it also ruled that petitioner's challenges regarding some of the items of evidence were procedurally defaulted

---

[3]In his reply, Petitioner does not specifically address all his claims raised in the initial petition. *Doc. No. 13.* The Court nevertheless addresses all the claims.

based on adequate and independent state court grounds. This court first will discuss the claims that were deemed procedurally defaulted in state court, as well as Petitioner's argument that the decision on direct appeal conflicts with Supreme Court precedent. The court will then address the issues raised and decided on the merits.

### III.  PROCEDURAL DEFAULT

Respondents assert that petitioner procedurally defaulted, without excuse, the *Brady* claims regarding the 911 call, inspection and photographs of Nichols's car, and the ineffective assistance of counsel claims. The Court agrees.

Federal habeas review is unavailable if a petitioner "procedurally defaults" a claim when the state court decision on the claim was based on a state law ground that is independent of the federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Cone v. Bell*, 556 U.S. 449, 465 (2009). "A decision that is based on state procedural grounds is not an adjudication on the merits." *Williams v. Alabama*, No. 12-14937, 2015 WL 3916740, at *4 (11th Cir. June 26, 2015) (citing *Harrington v. Richter*, 562 U.S. 86, 99 (2011)); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding . . . as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision"). The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).

## A. Procedurally Defaulted Claims

On direct appeal, the Alabama Court of Criminal Appeals pointed out that, at trial, Bunn testified that Nichols made a 911 call, but petitioner made no objection. *Doc. No. 9-21* at 11. Petitioner asked for a copy or transcript of the 911 call before trial, but he did not object to his failure to receive it until his motion for new trial. *Id.* Likewise, at trial, petitioner did not object when the prosecution offered photographs of Nichols's car. *Doc. No. 9-21* at 20. The Alabama Court of Criminal Appeals held that raising the issues regarding the 911 call and Nichols's car for the first time in the motion for new trial was too late; thus, under Alabama law, petitioner waived appellate review of these claims. *Doc. No. 9-21* at 12, 20 (relying on *Mitchell v. State*, 706 So.2d 787, 804 (Ala. Crim. App. 1997)).

As to the ineffective assistance of counsel claims, on postconviction appeal the Alabama Court of Criminal Appeals held that Petitioner failed to preserve his ineffective assistance of trial counsel claims under Alabama Rule of Criminal Procedure 32.2(d)[4] because he could have, but did not, raise them in his motion for new trial and on direct appeal. *Doc. No. 9-40* at 10-11. This Court must respect the Alabama decisions as an

---

[4]Alabama Rule of Criminal Procedure 32.2(d) provides, "Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable. In no event can relief be granted on a claim of ineffective assistance of trial or appellate counsel raised in a successive petition." Ala. R. Crim. P. 32.2(d) (footnote omitted). The Alabama Court of Criminal Appeals ruled that Petitioner was appointed new counsel before he was sentenced, new counsel had access to the trial transcript, new counsel filed the motion for new trial, new counsel knew the basis for the *Brady* claims, and nothing prevented new counsel from making alternative arguments based on ineffective assistance of counsel along with the *Brady* claims. *Doc. No. 9-40* at 10-11. Therefore, it held, new counsel should have raised the ineffective assistance of counsel claims in the motion for new trial. *Id.*

adequate and independent state law ground precluding federal review.  *See Coleman*, 501

U.S. at 729; *see also Harris*, 489 U.S. at 264 n.10. Consequently, Petitioner has procedurally

defaulted these issues.

## B. Excusing Defaulted Claims

This court can reach the merits of procedurally defaulted claims "only in two narrow

circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim

if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.

*See Murray v. Carrier,* 477 U.S. 478, 485 (1986); [*Wainwright v.*] *Sykes*, 433 U.S. [72,] 87

[(1977)]." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  To establish

"prejudice," a petitioner must show that there is at least a reasonable probability that the

result of the proceeding would have been different. *Wright v. Hopper,* 169 F.3d 695, 703

(11th Cir. 1999).  The prejudice test in the context of a *Brady* claim is essentially the same–to

show prejudice from undisclosed evidence a petitioner must show "'there is a reasonable

probability' that the result of the trial would have been different if the suppressed [evidence]

had been disclosed to the defense." *Strickler*, 527 U.S. at 289 (quoting *Kyles v. Whitley*, 514

U.S. 419, 433-34 (1995)); *cf. Tanzi v. Sec'y, Florida Dep't of Corr.*, 772 F.3d 644, 662 (11th

Cir. 2014) (the *Brady* prejudice test is the same as that for claims alleging ineffective

assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  "Second, a

federal court may also grant a habeas petition on a procedurally defaulted claim, without a

showing of cause or prejudice, to correct a fundamental miscarriage of justice." *Henderson*,

353 F.3d at 892 (citing *Murray*, 477 U.S. at 495-96).

### 1. The 911 Call and Nichols's Car

Petitioner argues that his procedural default of the claims regarding the 911 call and Nichols's car is excused because his counsel provided ineffective assistance regarding the claims and Petitioner suffered actual prejudice as a result. *Doc. No. 13* at 2. Ineffective assistance of counsel may constitute cause for a procedural default, but the ineffective assistance claim *itself* must be independently raised and properly exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) ("in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice") (citing *Murray*, 477 U.S. at 488-89). Here, petitioner's ineffective assistance of counsel claims are also defaulted; thus, he cannot rely on counsel's performance to excuse his default.

In addition, petitioner fails to show "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (quoting *Kyles*, 514 U.S. at 435). During the 911 call, Nichols made statements that contradicted those she made to officers. For example, on the 911 call she said, "I turned in" and "I pulled over," which suggest that Nichols was driving the car, not Bunn, as the prosecution alleged. *Doc. No. 9-21* at 13. Nichols also stated on the 911 call that she was shot at while "pulling into Mitchell Manor Trailer Park," and not the Spring Villa Grocery store, though the store is in close proximity to Mitchell Manor. *Doc.*

*No. 9-21* at 13-15. While the 911 call provided impeachment evidence against both Nichols and VanHook, the state courts reasonably concluded that Nichols's statement about the location could have been the product of her confusion after the events. Additionally, her comments that "I turned in" and "I pulled over" do not necessarily mean that she was the one driving the car, and they do not specifically identify the driver; instead, they could have meant it was her car or she was in it. *Doc. No. 9-21* at 13-15.  Finally, as the state court pointed out, the testimony of Bunn and Nichols was impeached with other evidence. *Doc. No. 9-21* at 33. As the Supreme Court explained, "the [materiality] question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (alteration added) (quoting *Kyles*, 514 U.S. at 435). Even assuming that the evidence in question were suppressed, petitioner does not show there is a reasonable probability that the result of the trial would have been different if the 911 call had been disclosed to him, or that the evidence undermined confidence in the verdict. *Strickler*, 527 U.S. at 289-90.

As to photographs and inspections, the prosecution provided Crawford photographs of Nichols's car showing bullet holes on the day trial started, and petitioner objected because he did not have a chance to conduct a forensic examination of the bullet holes in the car. *Doc. No. 9-21* at 20-21. Thus, this claim involves delay, not omission or suppression of evidence; a *Brady* claim usually concerns discovery of evidence discovered *after* trial. *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also United States v. Kubiak*, 704 F.2d

1545, 1549-50 (11th Cir. 1983) (the possible prejudice from untimely disclosure could have been cured at trial). In addition, the photographs corroborated statements that the shooting actually occurred, contrary to petitioner's position that the shooting may not have even happened and the bullet holes may have predated the investigation. *Doc. No. 9-21* at 19-20. This court agrees with the state courts that petitioner was not prejudiced by suppression until the day of trial of the photographs or his lack of access to the car. *Doc. No. 9-21* at 20-21. Petitioner does not dispute the trial court's statement that counsel knew the car "had been shot into and that people had been injured, so the pictures were not a surprise." *Doc. No. 9-21* at 20. The bullet holes in the car were repaired before defense counsel began work on the case and could have inspected them, and no testing could have been done by either party. *Doc. No. 9-21* at 21. Petitioner does not show there is a reasonable probability the result of the trial would have been different if the evidence had been disclosed earlier and petitioner had been granted access to the car. *Strickler*, 527 U.S. at 289-90.

Finally, petitioner argues that a fundamental miscarriage of justice would result if the Court did not hear his claims regarding the 911 call and Nichols's car. *Doc. No. 13* at 3. A "'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The miscarriage of justice standard is directly linked to actual innocence and requires that petitioner show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal

insufficiency. *See Schlup v. Delo*, 513 U.S. 298, 315, 321, 324 (1995) (providing examples of new evidence such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial"); *Bousley v. United States,* 523 U.S. 614, 623-24 (1998). Actual innocence requires a petitioner to show that in light of the new evidence, "'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley,* 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-28); *see also House v. Bell,* 547 U.S. 518, 538 (2006). This standard is demanding, and such showings are made "only in the 'extraordinary' case." *House*, 547 U.S. at 538 (citations omitted). Petitioner simply does not make the showing required by *Schlup* and, as previously explained, he fails to show he suffered prejudice under *Brady*.

### 2. Assistance of Counsel

Petitioner argues that this court should review his assistance of counsel claim to cure a fundamental miscarriage of justice. *Doc. No. 13* at 7. Petitioner does not present new evidence to support his claim. Instead, he argues that counsel failed to pursue diligently the evidence that would have strengthened petitioner's case and discredited the prosecution's case. *Doc. No. 13* at 8-11. Petitioner's arguments do not meet the difficult standard of showing that in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623 (quotation marks and citation omitted). Furthermore, all of petitioner's *Brady* claims are without merit; therefore, counsel's failure to pursue or preserve them did not prejudice him. *See Bolender v. Singletary*, 16 F.3d 1547,

1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Petitioner argues that on direct appeal, the Alabama Court of Criminal Appeals held that counsel failed to exercise due diligence, and that the holding "is in direct conflict with United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000)." *Doc. No. 1* at 10. Petitioner does not identify the conflicting precedent, but in his Rule 32 proceedings he argued that the Alabama Court of Criminal Appeals determined that his attorney performed deficiently, and, therefore, that it was the law of the case that counsel performed ineffectively. *Doc. No. 9-40* at 11 n.1. However, the Alabama Court of Criminal Appeals made it clear that Petitioner did *not* raise ineffective assistance of counsel on direct appeal, and it made no ruling regarding counsel's performance under *Strickland v. Washington*, 466 U.S. 668 (1984). *Doc. No. 9-40* at 11 n.1. Petitioner's argument that the state court ruled on direct appeal that his counsel provided ineffective assistance is not supported by the record.

## IV.  CLAIMS PROPERLY BEFORE THE COURT

Respondent argues that, while Petitioner's claims regarding the following evidence are properly before the Court, they lack merit: VanHook's prior convictions, videos from patrol cars, surveillance video from the store, and results from the gunshot residue-detecting dog. *Doc. No. 9* at 15; *Doc. No. 13*. The Court agrees.

### A.  Standard of Review

This federal court may consider a petition "for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Consequently, this Court has authority to grant habeas relief for errors of federal constitutional law only, not state law. *Id.*; *see also Ferguson v. Secretary, Dept. Corrections,* 580 F.3d 1183, 1211-12 (11th Cir. 2009) (claim involving solely state law issues could not serve as the basis for a federal habeas claim).

For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Congress, through passage of AEDPA in 1996, "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The United States Supreme Court has held that a state court decision is "contrary to" federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Id.* at 694 (citing *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000)).

-16-

Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams*, 529 U.S. at 411-13 (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See id.* at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The Court of Appeals for the Eleventh Circuit has held, "[c]learly established federal law is *not* the law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original, quoting *Williams*, 529 U.S. at 412). The reviewing court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 786 (2011). "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's

argument." *Smith v. Sec'y, Dept. of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009). All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker v. Sec'y, Dept. of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003).

Federal habeas courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (quoting *Harrington*, 131 S. Ct. at 786, and further quotation marks omitted). "The usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.'" *Allen v. Secretary, Florida Dept. of Corr.*, 611 F.3d 740, 748 (11th Cir. 2010) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted)). As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [Section 2254(d)] preserves authority

to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Harrington*, 131 S. Ct. at 786. Within this strict framework, the court addresses Petitioner's claims that are properly before the Court.

## B. *Brady v. Maryland* Claims

The state court reviewed and rejected the merits of Petitioner's *Brady* claims concerning VanHook's prior convictions, video from the patrol cars, surveillance video from the Spring Villa Grocery store, the results of the search by the gunshot residue-detecting dog, and the cumulative effect of all the alleged *Brady* violations. *Doc. No. 9-21* at 21-33. It held that none of the claims met the *Brady* requirements of (1) exculpatory or impeaching evidence that is favorable to the accused, (2) that was suppressed by the state either willfully or inadvertently, and (3) prejudice, or, in other words, "'a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." *Strickler*, 527 U.S. at 281-82, 289 (alteration added) (citation omitted).

### 1. VanHook's Prior Convictions

VanHook was Petitioner's former roommate and testified for the prosecution as an eyewitness to the shooting. There was testimony at trial on the question of whether petitioner was on good terms with VanHook when VanHook moved out. *Doc. No. 9-21* at 4. On the date of the shooting, VanHook was at the Spring Villa Grocery store. As set out in the direct appeal opinion:

VanHook saw a black Aviator driving north toward Opelika on Highway 169 and a black Honda traveling south. VanHook testified the Aviator appeared to be Crawford's vehicle. VanHook testified that he heard some gunshots coming from Highway 169. VanHook saw that the window to the Aviator was down and that Crawford was driving the vehicle. VanHook testified that he and Crawford made eye contact.

VanHook testified that a few days after the shooting, he saw Crawford against at the Spring Villa Grocery Store VanHook testified, "[Crawford] said you saw me, didn't you? And I told him I didn't see nothing, I didn't hear nothing. That the way I put it." (R. 203-204.) VanHook testified that he lied to Crawford because he did not want to be "involved in anything." (R. 204).

*Doc. No. 9-21* at 4-5. Petitioner argues that the state suppressed evidence that VanHook had six prior convictions for writing worthless checks, and that this evidence could have been used to impeach VanHook's testimony. *Doc. No. 13* at 4-5.

The state does have a duty to turn over impeachment evidence which, if suppressed, would deprive a defendant of a fair trial. *See United States v. Bagley*, 473 U.S. 667, 675-76, 682 (1985); *Kyles*, 514 U.S. at 435 ("once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review"). But here, as the Alabama Court of Criminal Appeals held, VanHook's prior convictions were readily available through the online database resources of the Alabama state courts. *Doc. No. 9-21* at 22. Petitioner cites no United States Supreme Court precedent that prior convictions available through other sources qualify as the type of impeachment evidence that the prosecution must disclose. *Cf. Ward v. Hall*, 592 F.3d 1144, 1183 (11th Cir.) ("We also have held that there is no suppression if the defendant knew of the information or had equal access to obtaining it."), *cert. denied*, 131 S. Ct. 647 (2010). The state court's ruling that Petitioner

suffered no *Brady* violation when the prosecutor did not inform him of VanHook's prior convictions was not a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

### 2. Gunshot Residue-Detecting Dog

At the hearing on petitioner's motion for new trial, petitioner presented evidence that a gunshot residue-detecting dog was taken around petitioner's vehicle and home "about a week after" the shooting, but the dog did not alert on anything, and the results of that search were not part of the case file. *Doc. No. 9-21* at 24. On direct appeal, the Alabama Court of Criminal Appeals held that this evidence was not exculpatory because "there was no testimony establishing that the dog was in fact trained to detect gunshot reside," and "[t]here was no testimony suggesting that any kind of residue would be present after a week. Moreover, the failure to detect gunshot residue in the home is immaterial to Crawford's case because the weapon was allegedly fired from a vehicle." *Doc. No. 9-21* at 25. The state court's decision that the evidence was not exculpatory and therefore its suppression did not violate *Brady* was not a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, and it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

In the Rule 32 proceedings, petitioner argued that testimony at that hearing established that the gunshot residue-detecting dog actually conducted the search on the night of the shooting. However, the state appeals court reviewed that testimony and found that it did not, in fact, establish that the dog searched the car or house on the night of the shooting. *Doc. No. 9-40* at 16-17. Petitioner does not rebut this determination of a factual issue "by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). Further, petitioner does not show that the state postconviction court decision that he failed to meet the *Brady* requirements was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Additionally, as previously discussed, the state court's decision that the gunshot residue evidence was not exculpatory and therefore did not violate *Brady* was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d).

### 3. Videos from Patrol Cars

Petitioner argues that the state failed to produce and, instead, allowed to be destroyed video evidence taken from law enforcement patrol cars that responded to the shooting. *Doc. No. 1* at 9. In state court, Petitioner argued that the video would have included audio of an officer interviewing Bunn, and it also would have shown a phone booth where VanHook claimed he parked his truck, as well as the parking lot where VanHook claimed to be after the incident. *Doc. No. 9-21* at 25-26. Petitioner maintains that the video would have provided impeachment evidence against Bunn and VanHook, but law enforcement destroyed the video

tapes in January or February of 2008, after petitioner's first discovery request on October 18, 2007. *Id.* at 28; *Doc. No. 9-10* at 101-02 (trial court ruling on motion for new trial).

This issue, as the state court recognized, is governed by *Arizona v. Youngblood*, 488 U.S. 51 (1988), and its progeny, not *Brady*, because the evidence was lost before its exculpatory value could be determined and because the state did not rely on the lost evidence in its case-in-chief. *Doc. No. 9-11* at 140 through *Doc. No. 9-12* at 93. In *Youngblood*, the Supreme Court "h[e]ld that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58; *see also Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam) ("We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police."); *Ex parte Gingo*, 605 So.2d 1237 (Ala. 1992) (adopting *Youngblood*), *cert. denied*, 506 U.S. 1049 (1993). The Alabama Court of Criminal Appeals held that Petitioner failed to show bad faith on the part of the police. *Doc. No. 9-21* at 29. It found that the video was lost because of a technical or software problem that caused the footage to be corrupted, and the technical problem affected all the videos prior to January 2008, not just the video for Petitioner's case. *Id.* The state court rejected Petitioner's argument that the videos were destroyed during a break in the evidentiary hearing, and Petitioner does not rebut the state court's finding by clear and convincing evidence. *Id.* at 29 n.3; 28 U.S.C. § 2254(e). Petitioner fails to establish that the decision of the Alabama state court regarding the patrol car video was an

unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), or that the state court rendered a decision that was contrary to, or an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d)(1).

### 4. Surveillance Video from the Store

Petitioner argues that police "failed to safeguard, copy and/or product the Spring Villa Store video." *Doc. No. 1* at 10. VanHook testified that he made eye contact with Petitioner while VanHook was standing near a phone booth outside the store when the shooting occurred. *Doc. No. 9-21* at 31-32. Petitioner maintains that the video would have shown whether VanHook was in fact standing where he testified he was standing.

The officer reviewing the surveillance video had technical difficulties in copying it, so he "decided to take pictures of different scenes on the video as they played and kept this evidence that the Defendant was present in [Spring Villa] Grocery and its parking lot, and that he was in his black Aviator." *Doc. No. 9-21* at 30. The store's security system maintained the video for only twenty-eight days before erasing it, and no one returned to copy the video, so only the video snapshots remained. *Id.*

The Alabama Court of Criminal Appeals held that it was "unclear from the record how much of the phone booth would have been visible from the video footage." *Doc. No. 9-21* at 32. As the trial court found:

> There is an unclear object in some of the pictures that may be the phone booth, near which Mr. [VanHook] testified he was standing, but here is no evidence, either from the testimony or otherwise, that says Mr. [VanHook] was ever standing on the side of the phone book depicted in the pictures. In fact, Mr.

> [VanHook] testified that when he heard the shots and saw the Defendant drive by, he was standing close the Lee Road 169. If this is the case, the video could not have shown whether Mr. [VanHook] was where he said he was. Therefore the Court finds no bad faith on the part of the investigators because there is no evidence that anything on the video would serve exculpatory or impeachment purposes for the Defendant.

*Id.* at 31 (quoting the trial court). The Alabama Court of Criminal Appeals held that there was no *Brady* violation because Petitioner "could have attempted to obtain a copy of this video himself." *Id.* This ruling does not run afoul of *Brady* or *Youngblood.* Petitioner thus fails to establish that the decision of the Alabama state court regarding the surveillance video was an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). In addition, Petitioner fails to establish that the state court rendered a decision that was contrary to, or an unreasonable application of, clearly established federal law in *Brady* or *Youngblood. See* 28 U.S.C. § 2254(d)(1).

### 5. Cumulative Effect

Petitioner argues that "[t]he cumulative effect of the suppressed, destroyed and/or unpreserved favorable evidence undeniably prejudiced [his] right to a fair trial." *Doc. No. 1* at 10 (alterations added). Under *Brady*, "[m]ateriality is determined by asking whether the government's evidentiary suppressions, viewed cumulatively, undermine confidence in the guilty verdict." *Allen v. Sec'y, Florida Dep't of Corr.*, 611 F.3d 740, 746 (11th Cir. 2010) (citing, among other cases, *Kyles*, 514 U.S. at 434, 436-37 & n.10).

The Alabama Court of Criminal Appeals held that "none of these alleged *Brady* violations would have individually or cumulatively warranted a new trial." *Doc. No. 9-21* at

32. After careful review, this court concludes the state court's decision does not represent an unreasonable determination of the facts in light of the evidence presented, and was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

## C. No Evidentiary Hearing Is Needed

The Court concludes that no evidentiary hearing is needed. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). The Court is not required hold an evidentiary hearing on Petitioner's claims because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Id.*

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Cedrick Crawford be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before **July 16, 2015,** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or

general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th  Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of July, 2015.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE